UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MADELYN S.,

        Plaintiff,

v.              5:17-CV-545 (TWD)

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>For Plaintiff<br>300 S. State Street<br>Suite 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ.<br>MATTHEW ROBERT MCGARRY, ESQ. |
| HON. GRANT JAQUITH<br>Interim United States Attorney<br>100 S. Clinton St.<br>PO Box 7198<br>Syracuse, NY 13261-7198 | CATHERINE ZURBRUGG, ESQ.<br>Special Assistant |

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **ORDER**

  Presently before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner pursuant to 42 U.S.C. §405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

those motions on September 5, 2018, during a telephone conference at which a court reporter was present.

At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found the Commissioner's determination was not based upon the application of proper legal principles and was not supported by substantial evidence. I provided further detail regarding my reasoning and addressing the specific issues raised by the parties in this appeal.

After due deliberation, and based up the Court's oral bench decision, which has been transcribed, is attached to this Order and is incorporated in its entirety by reference herein, it is hereby,

**ORDERED**, that the decision of the Commissioner is **VACATED** and that this case is **REMANDED** for further proceedings in accordance with this decision.

SO ORDERED.

Dated: September 6, 2018
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MADELYN S.

                                        Plaintiff,

-v-                                     17-CV-545

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE THÉRÈSE WILEY DANCKS**
September 5, 2018
100 South Clinton Street, Syracuse, New York


For the Plaintiff:

    OLINSKY LAW FIRM
    300 South State Street
    Suite 420
    Syracuse, New York 13202
    BY:  **MATTHEW ROBERT MCGARRY, ESQ.**

For the Defendant:

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY:  **CATHARINE L. ZURBRUGG, ESQ.**

*Hannah F. Cavanaugh*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

             (In chambers, counsel present by telephone.  Time
noted:  11:20 a.m.)

             THE COURT:  So I have before me a request for
judicial review of an adverse determination by the Acting
Commissioner under 42, United States Code, Section 405(g).

             The background is as follows:  Plaintiff was born in
October of 1990 and is currently 27 years old.  She was 20 years
old at the onset of her alleged disability in June of 2011.  She
completed 7th grade and attended Special Education classes.  She
has not received her GED.  She last regularly worked in June of
2011, but it was not at a level of substantial gainful activity.
Her past jobs have included fast food service preparation and
hotel housekeeping.

             In her application for benefits, she indicated she
suffers from fibromyalgia, connective tissue disease, and
depression.  She's treated mainly with St. Joseph's Hospital
Health Center physician Maryellen Lewis and Arthritis Health
Associates, or AHA, with Ramzi Khairallah, M.D., and April
Summerfield, who is a PA, a Physician's Assistant.  She's also
had one visit that I could find in the record with Audrey
Tyszka, a mental health social worker at St. Joseph's Outpatient
Behavioral Health, for mental health counseling, and she also
had records from treatment at St. Joseph's emergency room.

             The plaintiff reported that she's able to do
self-care and grooming, including bathing herself, but does need

1  some help occasionally with dressing herself.  She takes care of
2  her son with some limitations there and can also do some light
3  housework, including cleaning and some laundry with her son's
4  help.  She can prepare simple meals for her son.
5      She does not have a driver's license, but can walk
6  for a short period before needing to rest.  She can use public
7  transportation and go out alone.  She's able to shop for
8  groceries with help and she spends her time watching TV.  She
9  fatigues quickly and needs to lie down and rest or nap.  She
10 doesn't have any problems getting along with family and friends
11 and she's able to follow written and spoken instructions and has
12 no problems getting along with bosses.  She has pain all over,
13 which hinders her ability to do her daily activities.
14      Procedurally in this case, plaintiff filed for Title
15 II and Title XVI benefits on November 14, 2013.  She alleged an
16 onset date of disability beginning June 15, 2011.  A hearing was
17 conducted by Administrative Law Judge Laura Michalec Olszewski
18 on May 27, 2015, where plaintiff and a vocational expert
19 testified.  The ALJ issued a decision on August 13, 2015,
20 finding that plaintiff was not disabled at the relevant times.
21 The Social Security Administration made that a final
22 determination of the agency by denying plaintiff's request for
23 review on March 15, 2017.  In her decision, the ALJ applied the
24 required five-step sequential test for determining disability.
25      At step one, she found plaintiff had not engaged in

substantial gainful activity since the date of disability of June 15, 2011.

At step two, she concluded that plaintiff suffers from fibromyalgia, connective tissue disease, depression, and obesity.

At step three, the ALJ concluded that plaintiff's conditions do not meet or medically equal any of the listed presumptively disabling conditions considering listing 12.04 and 14.06. Then after a few of the record evidence, the ALJ determined plaintiff is capable of performing sedentary work with some restrictions.

At step four, the ALJ concluded plaintiff had no past relevant work.

At step five, the ALJ relied on testimony from a vocational expert and concluded that plaintiff was not disabled at the relevant times.

I've reviewed the record carefully, and in light of the arguments of counsel and what counsel have presented in their briefs, I've applied the requisite deferential standard, which requires me to determine whether proper legal principles were applied and whether the result is supported by substantial evidence.

First, regarding the ALJ's determination of plaintiff's residual functional capacity, or RFC, the plaintiff argues that the ALJ erred in formulating plaintiff's RFC because

1  she did not give significant weight to the opinion of treating
2  physician Dr. Lewis and did not explain why all of Dr.
3  Lorensen's limitations were not included in the RFC.  As we
4  know, the termination of a claimant's disability is a legal
5  determination reserved to the Commissioner.
6        I've done a complete review of the record and I do
7  agree with the plaintiff that the ALJ did not give good reasons
8  for not crediting all of the limitations suggested by Dr. Lewis
9  and for only giving her opinion some weight instead of
10 controlling weight.  I also find the ALJ did not sufficiently
11 explain why Dr. Lorensen's opinion that plaintiff had moderate
12 to marked restrictions in bending and squatting was not
13 incorporated into the RFC.
14       Initially, I note a treating physician's opinion is
15 entitled to controlling weight if the opinion is supported by
16 medically acceptable clinical and laboratory diagnostic
17 techniques and is not inconsistent with other substantial
18 evidence.  With regard to the opinions of treating physician Dr.
19 Lewis, plaintiff argues that the ALJ erred in giving only some
20 weight to her opinion, as I said, without including all of the
21 limitations she's suggested.
22       When a treating physician's opinion is not given
23 controlling weight, the ALJ has to consider factors such as
24 length and nature of the treatment relationship, the medical
25 evidence in support of the opinion, the consistency of the

1  opinion with the record as a whole, and whether the opinion is
2  from a specialist or any other factors that tend to support or
3  contradict the opinion.  While each and every factor need not be
4  recited, the treating physician's opinion need not be afforded
5  controlling weight when the opinion is not consistent with the
6  opinions of other medical experts and is contradicted by other
7  substantial evidence in the record.
8       A review of the record here shows that this is not
9  the case.  Here, the ALJ stated she gave some weight to Dr.
10 Lewis's opinion because she was plaintiff's treating physician
11 and based her opinion on a longitudinal period of treatment.
12 However, as I've stated, the ALJ did not give reasons for
13 discounting the opinion of Dr. Lewis, or stated another way, for
14 not giving it controlling weight.  The record shows Dr. Lewis's
15 opinion was consistent with her own records of treatment, as
16 well as the records from Arthritis Health Associates.  Plaintiff
17 consistently complained of pain in her joints and muscle
18 weakness, and examinations by Dr. Lewis showed myalgia and joint
19 swelling.
20      Dr. Lewis also found plaintiff to have tenderness in
21 her legs, shoulders, arms, hips, knees, and spine on exams.  She
22 exhibited muscle spasms in her midback.  Dr. Lewis also opined
23 that plaintiff had a limited ability for sitting, handling,
24 fingering, and feeling.  These were not included in the RFC.
25      And specifically, the sitting limitation as to Dr.

1  Lewis finding she couldn't sit -- she could only sit for less
2  than six hours, I should say, yet Dr. Lewis's findings are
3  consistent with examinations by the providers at AHA.  Multiple
4  fibromyalgia tender points were documented at each visit with
5  those providers.  PA Summerfield and Dr. Khairallah noted
6  morning stiffness, fatigue, and inflammation in her hands,
7  wrists, and elbows causing some limitation in movement and range
8  of motion.
9          Although the consultative examiner, Dr. Lorensen,
10 found plaintiff's hand and finger dexterity and grip strength
11 intact, he also found multiple trigger points, including the
12 epicondyle bilaterally.  Dr. Lewis also specifically supported
13 her opinion with her treatment records and explained her
14 findings in her opinion.  She also noted that the plaintiff had
15 difficulties and pain in her lumbar spine and difficulties in a
16 decreased range of motion in her lumbar spine.
17         In short, I find the failure to give Dr. Lewis's
18 opinion controlling weight is not properly explained and,
19 therefore, a remand is necessary on that basis.  Additionally,
20 while on remand, the ALJ should review the bending and squatting
21 limitations opined by Dr. Lorensen in conjunction with the
22 record as a whole to further explain why those limitations were
23 not incorporated into the RFC.  His findings on exam noted she
24 could only squat 40 percent and he found restrictions in her
25 range of motion in her lumbar spine.  He opines she had moderate

1  to marked restrictions in bending and squatting, yet the RFC
2  noted plaintiff could frequently bend and squat.  Other evidence
3  in the record, including Dr. Lewis's notes, show that plaintiff
4  had knee pain, swelling, effusion, and tenderness around the
5  joint and tendons and had a diminished range of motion in her
6  lumbar spine.
7        The plaintiff also argues that the ALJ's credibility
8  assessment was not supported because of the nature of
9  plaintiff's fibromyalgia, which was not fully reviewed by the
10 ALJ.  Fibromyalgia is a medically determinable impairment when
11 it is established by appropriate medical evidence.  A growing
12 number of courts have recognized that fibromyalgia is a
13 disabling impairment and that there are no objective tests,
14 which could conclusively confirm the disease.  And that's the
15 *Green Younger v. Barnhart* case, which is a Second Circuit case
16 from 2003.  The Circuit noted there that fibromyalgia, by its
17 very nature, is not always readily susceptible to detection or
18 verification through clinical testing or other objective means.
19       Here, the ALJ noted that treatment notes regarding
20 plaintiff's fibromyalgia were sparse and the radiologic findings
21 did not corroborate plaintiff's complaints of debilitating
22 limitations.  However, the diagnosis of fibromyalgia, as well as
23 connective tissue disease, by her treating physicians was
24 clearly made and their notes reflect that they were treating her
25 with various medication, such as Lyrica, to try to address her

1  symptoms.

2  She was consistent with her symptoms throughout the
3  record insofar as the pain and the debilitations that it caused.
4  Records from the AHA, whose providers are specialists in
5  rheumatology and joint diseases, showed plaintiff consistently
6  reported pain in her neck, low back, hips, wrists, elbows,
7  knees, and feet, and the providers there noted overall stiffness
8  and fatigue and numbness and tingling in her hands.  Findings on
9  exam showed tenderness in the tendons of her hands and wrists
10 and elbows and repeated findings of multiple trigger points for
11 fibromyalgia, including findings of 18 out of 18 points on
12 various dates of treatment.  She was prescribed various
13 medications, which did not relieve her reported symptoms.

14 And while I note that the mere diagnosis of
15 fibromyalgia does not translate to symptoms or disability
16 because fibromyalgia comes in varying degrees, in my view, the
17 record supports plaintiff's claims of widespread pain that
18 caused her not to be able to do her activities.  It is the
19 nature of fibromyalgia that it often does not reveal itself with
20 objective testing.  Additionally, Dr. Lewis opined that
21 plaintiff had overall weakness due to her fibromyalgia and
22 moderate to severe fatigue, as well as diffuse moderate to
23 severe myofacial pain causing limitations for her.

24 Accordingly, I find that the ALJ did not properly
25 explain the reasons for only giving some weight to the opinion

1  of Dr. Lewis and did not explain why all of Dr. Lorensen's
2  opinions were not incorporated into the RFC and did not properly
3  explain or consider plaintiff's fibromyalgia in conjunction with
4  the credibility review.  I find these errors do not enable the
5  Court to meaningfully determine whether the ALJ's decision is
6  supported by substantial evidence and, therefore, it must be
7  vacated.
8       I don't find persuasive proof of disability, however,
9  so I grant plaintiff's motion for judgment on the pleadings and
10 will remand it for further review.  A copy of the transcript of
11 my decision will be attached to the order should any appeal be
12 taken from my determination.
13      (Time noted:  11:33 a.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, HANNAH F. CAVANAUGH, Official Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 5th day of September, 2018.

X_____

HANNAH F. CAVANAUGH

Official U.S. Court Reporter